*504 SENTELLE, Chief Judge,
dissenting:
Though I respect my colleagues’ careful analysis of the application of the Chevron doctrine to the governing statutes in this case, in my view the Department of Agriculture’s interpretation of those statutes does not survive Chevron Step 2. I will grant the existence of some ambiguity (no doubt intended by Congress) in the Virus-Serum-Toxin Act, 21 U.S.C. §§ 151-159 (2007) (“VSTA”). I think, however, that the Department exceeds the bounds of reasonableness in the interpretation assumed in its regulations. In its interpretation of the terms within the statute, as well as its understanding of the power afforded by the statute, the Department has gone as far as it could and, in my view, farther than it reasonably could in aggregating power to itself.
First, the VSTA covers “any ... virus, serum, toxin, or analogous product .... ” 21 U.S.C. § 151 (emphasis added). Nothing in the Department’s regulations or its filings in the district court suggests an analogy between the test kits at issue and the viruses, sera, or toxins covered by the statute. Further, I find unpersuasive the Department’s arguments that a product with no other use than the diagnosis of an untreatable and invariably fatal disease is a form of “treatment.”
Finally, I find myself unable to join the conclusion in Judge Henderson’s opinion that the language in § 154 empowering the Department of Agriculture to “otherwise ... carry out” the goals of the statute includes the authority to regulate the “use” of biological products. While it is true that the “expressio unius est exclusio alterius ” canon of statutory construction is applied with muted force in “the administrative setting,” Maj. Op. at 500 (quoting Texas Rural Legal Aid, Inc. v. Legal Services Corp., 940 F.2d 685, 694 (D.C.Cir. 1991)), the concept does not go away, even in the administrative setting. As we have often held, congressional provision of an expressed authority mandate to accomplish statutory goals “does not create for the agency ‘a roving commission’ to achieve those or ‘any other laudable goal,’ ” BP West Coast Products, LLC v. FERC, 374 F.3d 1263, 1293 (D.C.Cir.2004) (quoting Michigan v. EPA 268 F.3d 1075, 1084 (D.C.Cir.2001)), by means beyond the authority granted in the statute. I therefore would accept Creekstone’s argument that the “otherwise to carry out” language of § 154 cannot support the “use” regulations.
In short, I would affirm the district court’s grant of summary judgment on Count II and reverse its denial on Count I. I would further note that Count III of this action will return to the district court for application of the arbitrary and capricious standard. It seems that the Department’s fear is that Creekstone’s use of the test kits would enable it to provide buyers with a false assurance that the cattle from which its beef is obtained are free of Bovine Spongiform Encephalopathy. However, as I read the record, all Creekstone hopes to do is assure foreign buyers that the beef is as well-tested as would be the case with beef produced in the home countries of those buyers. I will be interested in learning later whether this interdiction by the Department can survive the arbitrary and capricious test that will govern the district court’s review of that additional count.